# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: November 7, 2022

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * | * | |
| NICOLE TRACY and DANNY | * | No. 16-213V |
| STOTLER, on behalf of R.S., their minor | * | |
| child, | * | |
| | * | |
| Petitioners, | * | Special Master Sanders |
| | * | |
| v. | * | |
| | * | Attorneys' Fees and Costs; Duplicative |
| SECRETARY OF HEALTH | * | Billing; Excessive Billing |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * | * | |

*Mari Bush*, Mari C. Bush, LLC, Boulder, CO, for Petitioners.
*Lynn Schlie*, United States Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On July 18, 2022, Petitioners filed a motion for interim attorneys' fees and costs, requesting a total of **$306,941.68**[2] for their counsel Ms. Mari Bush, and also for Mr. Curtis Webb, for work performed through the pendency of this case. Mot. Int. Attorneys' Fees & Costs, ECF No. 130 [hereinafter "Fees App."]. In support of their request, Petitioners submitted an affidavit from Ms. Bush, the fee agreement between the parties, and billing records for Ms. Bush and Mr. Webb. *See* ECF Nos. 131–34. On July 27, 2022, Respondent filed his response to Petitioners' motion. Resp't's Resp., ECF No. 136. In his response, Respondent raised concerns regarding the double billing for work performed by two experienced attorneys, Ms. Bush and Mr. Webb. *Id.* at 5.

Specifically, Respondent noted that this issue was previously raised in November of 2019 when Petitioners requested that Mr. Webb serve as co-counsel during the entitlement hearing. *Id.* Respondent additionally highlighted that the undersigned previously cautioned Petitioners that the

---

[1] This Decision shall be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet**. In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted Decision. If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, such material will be deleted from public access.

[2] Respondent represented that Petitioners requested $310,517.57 total attorneys' fees and costs. Resp't's Resp. at 1. However, this appears to be inconsistent with Petitioners' actual total request. *See* Fees App. at 10–11.

undersigned would not compensate both Ms. Bush and Mr. Webb their full rates without adequate reasoning for the need for two senior attorneys. *Id.*; *see also* ECF No. 63. Respondent indicated that Petitioners' attorneys billed for the same services from 2019 through 2022 and that the Program should not be expected to pay attorneys' fees "where the work of one attorney would have been more than sufficient." ECF No. 136 at 6–7. Respondent concluded, "should the Special Master exercise her discretion in awarding interim attorneys' fees and costs, [R]espondent respectfully recommends that the Special Master exercise her discretion and determine a reasonable award for attorneys' fees and costs." *Id.* at 7.

Petitioners filed their reply on August 2, 2022, arguing that they knew the work of Mr. Webb "would be scrutinized[,]" so counsel did not "engage in unnecessary efforts on this matter." ECF No. 137 at 3. Petitioners argued Mr. Webb's involvement was beneficial, as "R.S.'s case was complex, the medical theory novel[,] and R.S.'s injuries catastrophic" *Id.* at 2. They continued that "[i]t is unreasonable for Respondent to have access to a stable of attorneys and support staff at all phases of the[] case[] but to deny Petitioners . . . two attorneys at the causation juncture of a case[.]" *Id.* They argued that "[t]he Program itself benefitted from the presence of two experienced attorneys at the hearings and in the pre- and post-hearing briefing phases[,]" as this case "developed important science and law for the Vaccine Program[.]" *Id.* at 2, 5. Petitioners wrote that "the efforts of the two attorneys complement[ed] each other rather than duplicat[ed] the work." *Id.* at 2.

As support, Petitioners relied on fees awarded to other multi-lawyer firms in the Program. *Id.* at 4. Petitioners urged that such complementary efforts should be encouraged to give Petitioners effective representation. *Id.* at 5. For the reasons stated below, the undersigned will award interim attorneys' fees and costs for Petitioners' counsels at this time, subject to minor adjustments.

## I. Procedural History

On February 11, 2016, Nicole Tracy and Danny Stotler ("Petitioners") filed a petition for compensation on behalf of their minor child R.S. pursuant to the National Vaccine Injury Compensation Program.[3] Pet. at 1, ECF No. 1; 42 U.S.C. §§ 300aa-1 to -34 (2012). Petitioners alleged that the pneumococcal conjugate ("PCV 13" or "Prevnar 13") vaccine R.S. received on March 18, 2013, caused her to suffer from transverse myelitis ("TM"). Pet. at 1. Along with their petition, Petitioners filed R.S.'s immunization record, affidavits, and medical records. Pet'r's Exs. 1–15, ECF Nos. 1-3–1-17. Petitioners filed a statement of completion on March 17, 2016. ECF No. 9.

Respondent filed his Rule 4(c) report on June 16, 2016, recommending that compensation be denied. Resp't's Report at 1, ECF No. 14. Thereafter, Petitioners filed additional medical records and multiple expert reports from Drs. Lawrence Steinman and Teri Schreiner, with Respondent providing expert reports from Dr. Stephen McGeady. *See* ECF Nos. 25, 29–32, 38, 45–50, 52, 60, 66, 80–81, 84. An entitlement hearing began on January 15, 2020, in Denver, CO, but due to the introduction of a new theory of causation, it was not completed. *See* Min. Entry,

---

[3] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

2

docketed Jan. 21, 2020. The hearing resumed and was concluded on January 14, 2021, remotely due to the COVID-19 pandemic. *See* Min. Entry, docketed Jan. 14, 2021. In between the hearings, the parties filed additional expert reports. *See* ECF Nos. 92–93, 95–96, 98. The undersigned issued a Ruling on Entitlement on March 30, 2022, finding that Petitioners are entitled to compensation. Ruling, ECF No. 110. This case is in the damages phase. ECF No. 113.

### II.    Availability of Interim Attorneys' Fees and Costs

#### A.  Good Faith and Reasonable Basis

Under the Vaccine Act, petitioners shall recover reasonable attorneys' fees and costs only if "the petition was brought in good faith, and there was a reasonable basis for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1) (2012). "Good faith" is a subjective standard. *Simmons v. Sec'y of Health & Hum. Servs.,* 875 F.3d 632, 635 (Fed. Cir. 2017). A petitioner acts in good faith if he or she honestly believes that a vaccine injury occurred. *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). In contrast, reasonable basis is purely an objective evaluation of the weight of the evidence. *Simmons,* 875 F.3d at 636. Respondent does not object to Petitioners' motion on the basis of good faith or reasonable basis. In fact, Petitioners have established they are entitled to compensation in this case, therefore providing overwhelming support for a reasonable basis and that their petition was brought in good faith. Therefore, the undersigned finds that the statutory criterion for an award of interim fees and costs are met.

#### B.  Justification for an Interim Award

In *Avera*, the Federal Circuit stated that a special master may award attorneys' fees and costs on an interim basis. *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). The Court noted that such awards "are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Id.* Similarly, the Federal Circuit held in *Shaw* that it is proper for a special master to award interim attorneys' fees "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and that there exists a good faith basis for the claim[.]" *Shaw v. Sec'y of Health & Hum. Servs.*, 609 F.3d 1372, 1375 (Fed. Cir. 2010).

Many cases in the Program are proceeding slower than they have in the past. *See Miles v. Sec'y of Health & Hum. Servs.*, No. 12-254V, 2017 WL 4875816 at *5 (Fed. Cl. Spec. Mstr. Oct. 4, 2017) ("[i]t may be months to years before an entitlement ruling is issued"); *Abbott v. Sec'y of Health & Hum. Servs.*, No. 14-907V, 2016 WL 4151689, at *4 (Fed. Cl. Spec. Mstr. July 15, 2016) ("[t]he delay in adjudication, to date, is due to a steady increase in the number of petitions filed each year."). As Petitioners' case was filed on February 11, 2016, it has been pending for more than six years. *See* Pet. At the current pace, a decision awarding damages may not be issued for a year or longer.

Meanwhile, Petitioners' fees and costs have accumulated in the course of prosecuting this case. Petitioners' counsel has requested **$306,941.68** in total fees and costs, and "[i]t cannot be seriously argued that in essence loaning cases thousands of dollars for years is not a hardship."

3

*Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009). Specifically, Petitioners request $113,873.58 in attorneys' fees for Mr. Webb, $3,328.50 in paralegal fees for Mr. Alexander Webb, and $2,016.61[4] in costs incurred by Mr. Webb's office, for a total of $119,218.69. *See* Fees App. at 8, 10. Petitioners also request $122,145.50 in attorneys' fees for Ms. Bush, $2,206.40 in paralegal fees for Ms. Bush, and $62,371.09 in costs incurred by Ms. Bush's office. *See id.* at 3, 10–11. Pursuant to General Order No. 9, Petitioners have also requested reimbursement of personal expenses in the amount of $1,000 for the retainer fee paid to Ms. Bush. ECF No. 129. Petitioners' total request for Ms. Bush amounts to $187,722.99. Fees App. at 11. Indeed, because of the protracted nature of the proceedings and the accumulation of fees and costs, the undersigned finds an award of interim attorneys' fees and costs generally reasonable and appropriate in this case.

### III. Reasonable Attorneys' Fees

Only reasonable attorneys' fees may be awarded, and it is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("the reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). In making a determination, applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316–18 (2008).

The Federal Circuit has approved the lodestar formula to determine reasonable attorneys' fees under the Vaccine Act. *Avera*, 515 F.3d at 1348. This is a two-step approach. *Id.* First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Avera*, 515 F.3d at 1348.

#### A. Reasonable Rates

Forum rates are used in the lodestar formula, except when the rates in an attorneys' local area are significantly lower than forum rates. *Id.* at 1348–49. In a 2015 decision, Special Master Gowen determined the reasonable forum rate ranges for attorneys with varying years of experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *18-19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *mot. for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). When considering whether a requested rate is reasonable, special masters may consider an attorney's overall legal experience and his experience in the Vaccine Program, as well as the quality of the work performed. *Id.* at *17. The *McCulloch* rates have been updated for subsequent years and are accessible on the Court's website at http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters.

##### a. Reasonable Hourly Rates

---

[4] Petitioners note several times that their requested costs for Mr. Webb totals $3,328.50. *See* Fees App. at 10–11. However, the correct total amount of Mr. Webb's requested costs is $2,016.61. *See id.* at 10.

4

### i. Ms. Mari Bush

Petitioners request that their counsel Mari Bush, be compensated at the following hourly rates for her representation of Petitioners: $400 per hour for work performed in 2014–2016; $415 per hour for work performed in 2017; $425 per hour for work performed in 2018; $440 per hour for work performed in 2019; $450 per hour for work performed in 2020; $475 per hour for work performed in 2021, and $490 per hour for work performed in 2022. Petitioners also request Ms. Bush be compensated for paralegal work as follows: $145 per hour for work performed in 2014; $175 per hour for work performed in 2015; $145 per hour for work performed in 2016–2018; $150 per hour for work performed in 2019; $165 per hour for work performed in 2020; $172 per hour for work performed in 2021, and $177 per hour for work performed in 2022. Ms. Bush billed for travel during the pendency of this case at a lower rate as follows: $200 per hour for travel in 2014–2016; $207.50 per hour for travel in 2017; $212.50 per hour for travel in 2018; $220 per hour for travel in 2019; $225 per hour for travel in 2020; $237.50 per hour for travel in 2021; and $245 per hour for travel in 2022.

### 1. Attorneys' Fees

The undersigned has reviewed the hourly rates requested by Petitioners for the attorney work of their counsel Ms. Bush. The undersigned notes that Ms. Bush has previously billed at, and been awarded, $400 per hour for her work in the Program from 2015 through 2019. *See Tinoco v. Sec'y of Health & Hum. Servs.,* No. 16-266V, 2019 WL 6125117, at *2 (Fed. Cl. Spec. Mstr. Aug. 29, 2019). She has also received the rate of $410 per hour for work performed in 2020 and 2021. *See Cooley v. Sec'y of Health & Hum. Servs.,* No. 17-1556V, 2021 WL 4272592, at *2 (Fed. Cl. Spec. Mstr. Aug. 17, 2021). While not binding on the undersigned's decision, it is persuasive that other special masters have adopted the same reduced rates for Ms. Bush. *See Miller v. Sec'y of Health & Hum. Servs.,* No. 19-1197V, 2021 WL 6285618, at *2 (Fed. Cl. Spec. Mstr. Nov. 30, 2021) (wherein Ms. Bush billed at the rate of $410 per hour for work performed in 2018; $415 per hour in 2019; $433 in 2020; $455 in 2021; and the special master reduced the award to $400 per hour for 2018–2019 and $410 per hour for work performed in 2020–2021). The undersigned agrees with the reasoning of other special masters and will likewise reduce Ms. Bush's rates for all work performed from 2014 to 2017, prior to Mr. Webb's involvement in 2018, consistent with that of other special masters.

In addition, from 2018 to 2022, the undersigned is not persuaded by Petitioners' reasoning for requiring the services of both Ms. Bush and Mr. Webb at their full rates. This double billing is specifically what the undersigned warned Petitioners against if they could not substantiate their justification for doing so. *See* ECF No. 63. As support, Petitioners cited circumstances where Ms. Bush, as an assisting attorney, has been called in to support other claims, and has been compensated accordingly. Fees App. at 5. Such circumstances included "where a local attorney must get involved to help coordinate efforts with treating physicians and other experts[,] and follow up with obtaining Court approval of settlements, when necessary." *See id.* None of those circumstances are present in this case. Ms. Bush sought the assistance of Mr. Webb due to her admitted inexperience with the substance of Petitioners' case. *See id.* at 8.

5

Considering Ms. Bush's over forty years of experience as a practicing attorney, with substantial experience in the Vaccine Program since 1990, the undersigned is not persuaded that the issues in this case were so novel and unique that they required the services of two highly experienced and competent attorneys in the Program, at this extent. As Ms. Bush is a sole practitioner since 2018, the undersigned indeed finds it reasonable that she may consult with other attorneys in the Vaccine Program. This is especially true where, as in the instant case, she had not previously worked on a Prevnar 13/TM case. However, although Ms. Bush had never litigated a PCV-13/TM case before, the undersigned posits that TM is not an obscure injury within the Program that adds a level of complexity sufficient to justify the need for another attorney. Indeed, the need for Mr. Webb's extensive involvement in both the entitlement hearing (held on two separate dates one year apart) and the briefings phases of this case is irreconcilable with Ms. Bush's decades-long experience in the Program. In fact, the undersigned must point out that Ms. Bush relied on her extensive experience in the Program to support her request for the highest hourly rate. *See* Fees App. at 5. She cannot then say she required the assistance of another attorney at his full rate because she was unfamiliar with the claim. Ms. Bush also attempted to rely on the "stable of attorneys" available to Respondent during every phase of a case to argue that limiting Petitioners to a sole attorney at the causation juncture is unreasonable. The undersigned finds Petitioners' argument to be disingenuous, as Respondent's counsel Ms. Lynn Schlie appeared alone during both parts of the entitlement hearing. This fact severely undercuts Petitioners' position. The undersigned will therefore reduce Ms. Bush's rates during the years of 2018 to 2022 below what she has previously been awarded in the Program for those years.

The undersigned will award Ms. Bush $400 per hour for work performed from 2014–2017; $380 per hour for work performed in 2018–2021; and $390 per hour for work performed in 2022.

### 2. Paralegal Fees

The undersigned has also reviewed the hourly rates requested by Petitioners for the paralegal work of their counsel Ms. Bush. Attorneys may bill for paralegal work, but only at a rate that is comparable to what would be paid to a paralegal. *See, e.g.*, *Miller*, 2021 WL 6285618, at *2. Petitioners request up to $177 per hour for paralegal work. Petitioners' requested rates exceeding $145 per hour before 2017 are inconsistent with the Court's hourly rate fee schedule.[5] Additionally, paralegal hourly rates in Ms. Bush's office have previously been reduced from $175 to $145 per hour for work performed through 2019. *See, e.g.*, *Little v. Sec'y of Health & Hum. Servs.*, No. 16-836V, 2017 WL 6461819, at *2 (Fed. Cl. Spec. Mstr. May 23, 2019); *Tinoco*, 2019 WL 6125117, at *2. The undersigned will reduce Ms. Bush's hourly paralegal rate to the previously awarded rate of $145 through the pendency of this case.

### 3. Travel

In the Vaccine Program, special masters traditionally have compensated attorneys for their time spent traveling at half the attorneys' hourly rate. *See, e.g.*, *Tinoco*, 2019 WL 6125117, at *2; *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153, at *24 (Fed. Cl. Spec. Mstr. July 25, 2011). The undersigned has reviewed Ms. Bush's entries for travel time. While she indeed billed correctly at approximately half her hourly rate, the undersigned's adjustment to

---

[5] The full fee schedule is located on the Court's website at http://www.uscfc.uscourts.gov/node/2914.

Ms. Bush's hourly rate will therefore reduce the hourly rate billed for travel. The undersigned will accordingly award Ms. Bush $200 per hour for any travel compensated in 2014–2017; $190 per hour for travel in 2018–2021; and $195 per hour for travel in 2022.

### ii. Mr. Curtis Webb

Petitioners also request that their counsel Curtis Webb, be compensated at the following hourly rates for his assistance in the representation of Petitioners: $430 per hour for work performed in 2018; $440 per hour for work performed in 2019; $458.50 per hour for work performed in 2020; $482 per hour for work performed in 2021, and $497.50 per hour for work performed in 2022. Petitioners also request the paralegal assisting Mr. Webb be compensated at $155 per hour for work performed in 2021, and $165 per hour for work performed in 2022. Mr. Webb billed for travel during the pendency of this case at a lower rate as follows: $229.25 per hour for travel in 2020. The undersigned has reviewed the hourly rates requested by Petitioners for the work of their counsel Mr. Webb, and the paralegal assisting him. The hourly rates requested for these individuals are consistent with what they have previously been awarded for Vaccine Program work through 2021. *See, e.g.*, *Sharpe v. Sec'y of Health & Hum. Servs.*, No. 14-65V, 2021 WL 2917247, at *3 (Fed. Cl. Spec. Mstr. June 10, 2021); *Rowan v. Sec'y of Health & Hum. Servs.*, No. 17-760V, 2020 WL 7869436 (Fed. Cl. Spec. Mstr. Nov. 17, 2020); *D'Toile v. Sec'y of Health & Hum. Servs.*, No. 15-85V, 2018 WL 5578871, at *2 (Fed. Cl. Spec. Mstr. Sept. 6, 2018).

In cases involving the services of more than one attorney, the second attorney has routinely been compensated, but at a lower rate. *See, e.g.*, *Pasco v. Sec'y of Health & Hum. Servs.*, No. 16-500V, 2022 WL 2866365, at *3 (Fed. Cl. Spec. Mstr. July 7, 2022). The undersigned is not inclined to reduce Mr. Webb's rates lower than Ms. Bush's, in light of the fact that Mr. Webb has routinely been awarded forum rates in the past. *See Sharpe*, 2021 WL 2917247, at *3. Most importantly, Mr. Webb was brought in by Ms. Bush to assist Petitioners with their claim. The undersigned will therefore award Mr. Webb and his paralegal their full requested rates.

### b. Hours Expended

The second step in *Avera* is for the Court to make an upward or downward modification based upon specific findings. *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Id.* at 1522. It is also "inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Hum. Servs.*, No. 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Special masters have also found that "[a]n inexperienced attorney may not ethically bill his client to learn about an area of law in which he is unfamiliar. If an attorney may not bill his client for this task, the attorney may also not bill the Program for this task." *Carter v. Sec'y of Health & Hum. Servs.*, No. 04-1500V, 2007 WL 2241877, at *5 (Fed. Cl. Spec. Mstr. July 13, 2007). The Program does not compensate counsels' time spent attending vaccine-related conferences. *See, e.g.*, *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 212–13 (2009). A special master need not engage

in a line-by-line analysis of Petitioners' fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.,* 102 Fed. Cl. 719, 729 (2011).

In the Program, billing for administrative tasks is also not appropriate, no matter who performs them. *See Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates"); *see also Isom v. Sec'y of Health & Hum. Servs.,* No. 94-770, 2001 WL 101459, at *2 (Fed. Cl. Spec. Mstr. Jan. 17, 2001) (agreeing with Respondent that tasks such as filing and photocopying are subsumed under overhead expenses); *Walters v. Sec'y of Health & Hum. Servs.,* No. 15-1380V, 2022 WL 1077311, at *5 (Fed. Cl. Spec. Mstr. Sept. 17, 2018) (failing to award fees for the review of CM/ECF notifications and the organization of the file); *McCulloch,* 2015 WL 5634323, at *26 (noting that clerical and secretarial tasks should not be billed at all, regardless of who performs them). Clerical and administrative work explicitly includes organizing exhibits, preparing compact discs, and filing records. *Floyd v. Sec'y of Health & Hum. Servs.*, No. 13-556V, 2017 WL 1344623, at *5 (Fed. Cl. Spec. Mstr. Mar. 2, 2017); *Hoskins v. Sec'y of Health & Hum. Servs.*, No. 15-071V, 2017 WL 3379270, at *3 (Fed. Cl. Spec. Mstr. July 12, 2017); *Kerridge v. Sec'y of Health & Hum. Servs.*, No. 15-852V, 2017 WL 4020523, at *3 (Fed. Cl. Spec. Mstr. July 28, 2017).

The undersigned and other special masters have previously reduced the fees paid to petitioners due to excessive and duplicative billing. *See, e.g.*, *Ericzon v. Sec'y of Health & Hum. Servs.*, No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reducing the overall fee award by 10 percent due to excessive and duplicative billing). Special masters have also previously noted the inefficiency that results when cases are staffed by multiple individuals and have reduced fees accordingly. *See Sabella*, 86 Fed. Cl. at 209–14 (affirming the special master's reduction of fees, when supported by sufficient explanation, because the participation of two different firms caused overstaffing and a duplication of efforts); *see also Raymo v. Sec'y of Health & Hum. Servs.*, No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reducing the overall fee award by 20 percent for one attorney and 40 percent for another), *mot. for rev. denied*, 129 Fed. Cl. 691, 703 (2016) (affirming the special master's reduction because she did not reduce fees "simply because multiple law firms and attorneys participated in the case[,]" but rather she found many specific billing entries "unreasonably duplicative or excessive billing[,]" including when multiple attorneys billed for single tasks and when attorneys billed excessively for intraoffice and interoffice communications); *Austin v. Sec'y of Health & Hum. Servs.*, No. 10-36V, 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) (deducting fees for excessive intraoffice communication in a case with seven attorneys from one firm); *Carcamo v. Sec'y of Health & Hum. Servs.*, No. 97-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011) (reducing fees when two attorneys at the same firm billed for the same meetings with a client).

### i. Ms. Mari Bush

Petitioners have requested **$124,351.90** in interim attorney and paralegal fees for Ms. Bush. *See* Fees App. at 3, 11. Upon review, the undersigned finds that the billed hours for Ms. Bush are mostly reasonable. *See* Pet'r's Ex. 117, ECF No. 133-1. Counsel has provided sufficiently detailed descriptions for the tasks performed by herself and billed mostly appropriately when the tasks she performed fell into the paralegal category. However, counsel billed for administrative tasks,

including the review of Court orders and minute entries, organizing files, the filing of exhibits, and instructing her staff, on several occasions.[6] *See id.* at 1–37. Counsel also billed 2.6 hours for attending presentations regarding TM and vaccines at a medical conference on August 13, 2016. Pet'r's Ex. 117 at 30. She accordingly billed for travel associated with attending this conference, totaling 2 hours. *See id.* After careful analysis of Ms. Bush's attorney fees, the undersigned finds that no less than 21 hours reasonably represents non-compensable attorney work.[7] *See id.* After further analysis of Ms. Bush's paralegal fees, the undersigned finds that no less than 8 hours represents non-compensable paralegal work.[8] *See id.* The undersigned will not compensate Ms. Bush for 2 hours of travel for the conference she attended in 2016. *See id.* at 30.

Additionally, excessive and duplicative billing by both Ms. Bush and Mr. Webb warrants reductions in attorneys' fees. Indeed, since Mr. Webb's involvement in 2018, Ms. Bush's billing records contain a number of entries that are excessive, duplicative, or both. There are numerous entries for interoffice communications, discussions, and the preparation of exchanges from Ms. Bush to Mr. Webb. For example, Ms. Bush billed for communications, including telephone calls and emails with Mr. Webb on a significant number of dates from 2018 to 2022.[9] *See* Pet'r's Ex.

---

[6] Billing for administrative tasks occurred on, but is not limited to, the following dates: 2/4/2022; 3/23/2022; 4/27/2022; 5/31/2022; 1/7/2021; 1/14/2021; 2/17/2021; 2/26/2021; 4/29/2021; 4/30/2021; 11/12/2021; 1/2/2020; 1/3/2020; 1/5/2020; 1/6/2020; 1/8/2020; 1/9/2020; 114/2020; 1/16/2020; 1/17/2020; 1/22/2020; 1/24/2020; 1/27/2020; 3/6/2020; 3/27/2020; 7/16/2020; 7/28/2020; 8/6/2020; 8/7/2020; 8/28/2020; 7/8/2019; 8/12/2019; 8/26/2019; 8/28/2019; 10/4/2019; 10/18/2019; 10/21/2019; 10/24/2019; 10/25/2019; 10/26/2019; 10/28/2019; 11/1/2019; 11/6/2019; 11/27/2019; 12/2/2019; 12/3/2019; 12/17/2019; 12/18/2019; 12/19/2019; 12/20/2019; 12/23/2019; 12/29/2019; 1/22/2018; 3/14/2018; 3/15/2018; 3/25/2018; 4/24/2018; 4/25/2018; 5/8/2018; 5/9/2018; 5/31/2018; 6/8/2018; 6/22/2018; 6/26/2018; 7/18/2018; 7/19/2018; 7/27/2018; 7/30/2018; 9/4/2018; 9/11/2018; 9/20/2018; 9/25/2018; 10/9/2018; 10/22/2018; 1/24/2017; 2/20/2017; 2/23/2017; 7/4/2017; 7/5/2017; 7/21/2017; 8/1/2017; 8/16/2017; 8/26/2017; 8/31/2017; 9/1/2017; 11/1/2017; 11/6/2017; 11/14/2017; 12/14/2017; 1/11/2016; 1/27/2016; 2/5/2016; 2/11/2016; 2/12/2016; 2/16/2016; 2/17/2016; 2/24/2016; 3/17/2016; 4/7/2016; 5/4/2016; 5/5/2016; 6/23/2016; 7/8/2016; 8/31/2016; 10/11/2016; 10/17/2016; 12/16/2016; 4/23/2015; 6/12/2015; 6/15/2015; 12/18/2014. *See* Pet'r's Ex. 117.

[7] After a close inspection of counsel's billing records, the undersigned estimates the approximate number of hours of non-compensable attorney work as follows: .2 hours in 2014; .5 hours in 2015; 6.5 hours in 2016; 2.4 hours in 2017; 2.2 hours in 2018; 4.1 hours in 2019; 4.1 hours in 2020; .6 hours in 2021; and .4 hours in 2022. Pet'r's Ex. 117.

[8] After a close inspection of counsel's billing records, the undersigned estimates the approximate number of hours of non-compensable paralegal work as follows: 1.5 hours in 2016; .5 hours in 2017; 1.3 hours in 2018; 2.2 hours in 2019; 1.9 hours in 2020; .5 hours in 2021; and .1 hours in 2022. Pet'r's Ex. 117.

[9] Ms. Bush billed for communications with Mr. Webb on the following dates: 1/7/2022; 3/30/2022; 1/6/2021; 1/7/2021; 1/8/2021; 1/11/2021; 1/12/2021; 1/13/2021; 1/14/2021; 1/21/2021; 1/27/2021; 1/31/2021; 2/1/2021; 2/17/2021; 2/19/2021; 2/21/2021; 2/23/2021; 2/24/2021; 2/25/2021; 2/26/2021; 3/29/2021; 4/5/2021; 4/6/2021; 4/8/2021; 4/12/2021; 4/13/2021; 4/14/2021; 4/15/2021; 4/19/2021; 4/21/2021; 4/22/2021; 4/23/2021; 4/28/2021; 4/29/2021; 4/30/2021; 1/3/2020; 1/6/2020; 1/7/2020; 1/8/2020; 1/9/2020; 1/10/2020; 1/13/2020; 1/14/2020; 1/15/2020; 1/16/2020; 1/23/2020; 1/24/2020; 1/27/2020; 2/18/2020; 2/19/2020; 3/6/2020; 3/24/2020; 3/26/2020; 4/27/2020; 5/4/2020; 5/5/2020; 5/26/2020; 5/27/2020; 7/16/2020; 7/20/2020; 7/21/2020; 7/28/2020; 8/21/2020; 8/27/2020; 8/28/2020; 9/3/2020; 9/22/2020; 11/25/2020; 11/27/2020; 12/1/2020; 4/25/2019; 7/8/2019; 8/13/2019; 9/3/2019; 9/30/2019; 10/1/2019; 10/2/2019; 10/4/2019; 10/7/2019; 10/11/2019; 10/15/2019; 10/21/2019; 10/23/2019; 10/24/2019; 10/25/2019; 10/26/2019; 11/1/2019; 11/3/2019; 11/4/2019; 11/6/2019; 11/8/2019; 11/17/2019;

117. Some of these dates include multiple, separate communications between the two attorneys per day. *See, e.g.*, *id.* at 13. While the undersigned is aware that such communications were undoubtedly necessary to discuss the substance and logistics for counsels' representation of Petitioners, the amount of billing is unreasonable and excessive in the undersigned's experience. There are also several notations that show Ms. Bush and Mr. Webb billed for the same thing, resulting in duplicative billing. For example, on April 25, 2019, both attorneys billed for the same communication with each other. Pet'r's Ex. 117 at 13; Pet'r's Ex. 118 at 1. Ms. Bush and Mr. Webb billed for the same communications with each other on many dates, resulting in substantial duplicative billing.[10] Of note, on March 30, 2022, both attorneys billed for Ms. Bush to send, and for Mr. Webb to receive, a copy of the undersigned's Ruling on Entitlement. Pet'r's Ex. 117 at 1; Pet'r's Ex. 118 at 10. In addition to communications, both attorneys billed considerable time for the reading of the hearing transcript and the undersigned's Ruling on Entitlement. *See* Pet'r's Ex. 117 at 1, 4; *see also* Pet'r's Ex. 118 at 9, 10. Both counsels also billed for travel and meeting with Dr. Schreiner in Colorado on October 1, 2019. Pet'r's Ex. 117 at 13; Pet'r's Ex. 118 at 1. The undersigned finds this excessive and duplicative billing warrants a 20% reduction in Ms. Bush's fees incurred during the years 2018 to 2022, as that is when Mr. Webb began his work on Petitioners' claim. The undersigned will not apply a percentage reduction to Ms. Bush's fees incurred during 2014 to 2017.

Accordingly, applying the reduced rates to attorney and paralegal fees and travel, Petitioners are entitled to interim attorneys' fees for Ms. Bush in the amount of **$88,899.70**.[11]

### ii. Mr. Curtis Webb

Petitioners have also requested **$117,202.08** in interim attorneys' fees for Mr. Webb. *See* Fees App. at 8. Upon review, the undersigned finds the billed hours to be mostly reasonable. Pet'r's Ex. 118, ECF No. 134-1. However, the undersigned finds that no less than .5 hours in 2020 reasonably represents non-compensable attorney work, such as organizing and highlighting files.[12] *See id.* at 3. The undersigned must note that these entries are "block billed" with appropriate tasks

---

11/18/2019; 11/27/2019; 12/4/2019; 12/9/2019; 12/17/2019; 12/20/2019; 12/23/2019; 12/27/2019; 12/29/2019; 8/18/2018; 8/27/2018. *See* Pet'r's Ex. 117.

[10] Duplicative billing occurred on the following dates on which both attorneys billed for communications with each other: 9/30/2019; 10/4/2019; 10/15/2019; 10/23/2019; 10/25/2019; 11/4/2019; 11/6/2019; 11/18/2019; 12/17/2019; 12/27/2019; 1/8/2020; 1/10/2020; 1/13/2020; 1/15/2020; 1/16/2020; 1/24/2020; 1/27/2020; 2/18/2020; 2/19/2020; 3/6/2020; 3/24/2020; 3/26/2020; 4/27/2020; 5/4/2020; 5/5/2020; 5/27/2020; 7/16/2020; 7/20/2020; 8/21/2020; 9/3/2020; 9/22/2020; 11/25/2020; 11/27/2020; 1/6/2021; 1/7/2021; 1/11/2021; 1/12/2021; 1/13/2021; 1/14/2021; 1/27/2021; 1/31/2021; 2/1/2021; 2/17/2021; 2/21/2021; 2/23/2021; 2/24/2021; 2/26/2021; 3/29/2021; 4/15/2021; 4/19/2021; 4/21/2021; 4/22/2021; 4/23/2021; 4/28/2021; 4/29/2021; 4/30/2021. *See* Pet'r's Exs. 117, 118.

[11] This amount is comprised of the following: 2.6 x $400/hr = **$1,040 in 2014**; 24.4 x $400/hr + 1.6 x $200/hr = **$10,080 in 2015**; 38 x $400/hr + 1.8 x $145/hr = **$15,461 in 2016**; 31.8 x $400/hr + .3 x $145/hr + 2 x $200/hr = **$13,163.50 in 2017**; 17.5 x $380/hr = $6,650 x .2 = $1,330. $6,650 - $1,330 = **$5,320 in 2018**; 37 x $380/hr + 1.4 x $145/hr + 2.1 x $190/hr = $14,662 x .2 = $2,932.40. $14,662 - $2,932.40 = **$11,729.60 in 2019**; 38.5 x $380/hr + 2.2 x $145/hr + 2 x $190/hr = $15,329 x .2 = $3,065.80. $15,329 - $3,065.80 = **$12,263.20 in 2020**; 55.6 x $380/hr + .6 x $145/hr = $21,215 x .2 = $4,243. $21,215 - $4,243 = **16,972 in 2021**; and 9.2 x $390/hr = $3,588 x .2 = $717.60. $3,588 - $717.60 = **$2,870.40 in 2022**.

[12] Billing for administrative tasks occurred on 1/6/2020 and 1/12/2020. Pet'r's Ex. 118 at 3.

that are compensable in the Program, making it difficult to determine the precise number of hours that represent non-compensable tasks. Therefore, the undersigned approximated the .5-hour total reduction for non-compensable attorney work.

Similar to the undersigned's findings above, Mr. Webb likewise engaged in excessive and duplicative billing. To some extent, Mr. Webb and Ms. Bush separated tasks so that they were not billing for work that was also performed by the other. *See, e.g.*, Pet'r's Ex. 117 at 8 (billing records documenting Ms. Bush prepared the direct examination of Petitioners); Pet'r's Ex. 118 at 3 (billing records documenting Mr. Webb prepared the direct examination of Dr. Steinman). However, after careful analysis, the undersigned finds that, consistent with that described above for Ms. Bush, Mr. Webb engaged in duplicative billing for the same communications with Ms. Bush and other services performed during his representation of Petitioners.[13] Mr. Webb also excessively billed for interoffice communications and interactions with Ms. Bush. Indeed, Mr. Webb billed for email and phone correspondence with Ms. Bush on numerous dates from 2018 to 2022.[14] *See* Pet'r's Ex. 118. Further, the undersigned finds that Mr. Webb billed excessively for intraoffice communications with his paralegal. For example, on April 21, 2021, Mr. Webb billed 42 minutes, at a rate of $482/hr, to confer with his paralegal via email. *Id.* at 8. The next two days, on both April 22 and 23, 2021, Mr. Webb again billed 30 minutes each day to confer with his paralegal via email. *See id.* at 8–9. Mr. Webb billed significant time for discussions or meetings with his paralegal on at least two additional dates during April of 2021. *Id.* at 9. The undersigned finds the duplicative and excessive billing by Mr. Webb warrants a 20% reduction of his overall fees.

Accordingly, Petitioners are entitled to interim attorneys' fees for Mr. Webb and his paralegal in the amount of **$93,578.23**.[15]

**B. Costs**

Similar to attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Petitioners have requested **$63,371.09** in interim costs for Ms. Bush. *See* Fees App. at 3, 6, 11; *see also* ECF Nos. 129, 131-2. This amount is comprised of acquiring medical records, postage, photocopies, the Court's filing fee, expert work performed by Drs. Lawrence Steinman and Teri Schreiner, travel for the

---

[13] *See, e.g.*, *supra* note 10.
[14] Mr. Webb billed for communications with Ms. Bush on the following dates: 3/31/2022; 3/30/2022; 2/23/2022; 2/3/2022; 8/17/2021; 4/30/2021; 4/29/2021; 4/28/2021; 4/23/2021; 4/22/2021; 4/21/2021; 4/19/2021; 4/15/2021; 3/29/2021; 2/26/2021; 2/24/2021; 2/23/2021; 2/21/2021; 2/17/2021; 2/1/2021; 1/31/2021; 1/27/2021; 1/14/2021; 1/13/2021; 1/12/2021; 1/11/2021; 1/7/2021; 1/6/2021; 11/27/2020; 11/25/2020; 9/22/2020; 9/3/2020; 8/21/2020; 7/20/2020; 7/16/2020; 5/27/2020; 5/5/2020; 5/4/2020; 4/27/2020; 3/26/2020; 3/24/2020; 3/6/2020; 2/19/2020; 2/18/2020; 1/27/2020; 1/24/2020; 1/16/2020; 1/15/2020; 1/13/2020; 1/10/2020; 1/8/2020; 12/27/2019; 12/17/2019; 11/21/2019; 11/18/2019; 11/6/2019; 11/4/2019; 10/25/2019; 10/23/2019; 10/15/2019; 10/4/2019; 10/1/2019; 9/30/2019; 4/25/2019; 11/27/2018; 11/19/2018. *See* Pet'r's Ex. 118.
[15] This amount is comprised of the following: .4 x $430/hr = $172 x .2 = $34.40. $172 - $34.40 = **$137.60 in 2018**; 43.5 x $440/hr = $19,140 x .2 = $3,828. $19,140 - $3,828 = **$15,312 in 2019**; 66.3 x $458.50/hr + 16.3 x $229.25/hr = $34,135.33 x .2 = $6,827.10. $34,135.33 - $6,827.10 = **$27,308.23 in 2020**; 122 x $482/hr + 15.3 x $155/hr = $61,175.50 x .2 = $12,235.10. $61,175.50 - $12,235.10 = **$48,940.40 in 2021**; and 2.8 x $497.50/hr + 5.8 x $165/hr = $2,350 x .2 = $470. $2,350 - $470 = **$1,880 in 2022**.

entitlement hearing, and Petitioners' $1,000 retainer fee. *See* Fees App. at 6. Petitioners have provided mostly adequate documentation of the requested costs, and the costs are largely reasonable in the undersigned's experience. However, Petitioners have failed to provide documentation of several expenses, including the Court's filing fee, mileage costs, and some copies, for a total of **$550.42**.[16] Without documentation, these costs cannot be reimbursed at this time. *See Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005) (finding that when petitioners fail to carry their burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation). Therefore, the undersigned will award Ms. Bush **$62,820.67** in interim costs.

Petitioners have also requested **$2,016.61** in interim costs for Mr. Webb. Fees App. at 10–11; *see also* ECF No. 134-2. This amount is comprised of obtaining medical literature and travel, lodging, and meals for the entitlement hearing in 2020. *See id.* Mr. Webb provided a list of his expenses, but he failed to provide *any* documentation of the requested costs. *See* ECF No. 134-2. Without documentation, the undersigned cannot award costs to Mr. Webb at this time. Accordingly, the undersigned will defer the reimbursement of Mr. Webb's costs.

In light of the undersigned's decision to defer the award of Mr. Webb's total costs and some of Ms. Bush's costs, Petitioners may submit appropriate documentation within fourteen (14) days of the filing of this Decision in the form of a supplemental motion for interim costs. Alternatively, Petitioners may submit this documentation along with their application for final attorneys' fees and costs. Upon Petitioners' submission, Petitioners' request for costs may be re-examined. The total amount of costs awarded at this time shall therefore be **$62,820.67.**

## IV.   Conclusion

In accordance with the Vaccine Act, 42 U.S.C. §15(e) (2012), the undersigned has reviewed the billing records and costs in this case and finds that Petitioners' request for interim fees and costs is reasonable. Based on the above analysis, the undersigned finds that it is reasonable to compensate Petitioners and their counsels as follows:

| Interim Attorneys' Fees Requested | $241,553.98 |
|---|---|
| (Reduction to Fees) | - $59,076.05 |
| **Interim Attorneys' Fees Awarded** | **$182,477.93** |
|  |  |
| Interim Attorneys' Costs Requested | $65,387.70 |
| (Reduction of Costs) | - $2,567.03 |
| **Interim Attorneys' Costs Awarded** | **$62,820.67** |
|  |  |
| **Interim Attorneys' Fees and Costs** | **$245,298.60** |

---

[16] This amount is comprised of the following: $400 for the Court's filing fee; $56.96 in mileage; $34.50 in mileage; $3.43 and $20.25 in postage and copies, respectively from June 2015, although the undersigned believes these requested amounts to be possible duplicates; and $35.28 in copies from Office Depot in 2020.

Accordingly, the undersigned awards the amount of **$151,720.37** to be issued in the form of a check payable jointly to Petitioners and Petitioners' counsel Mari Bush, for interim attorneys' fees and costs, and Petitioners' retainer fee. The undersigned also awards the amount of **$93,578.23** to be issued in the form of a check payable jointly to Petitioners and Petitioners' counsel Curtis Webb, for interim attorneys' fees.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of the above Decision.[17]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[17] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.